| | |
|---|---|
| **Snell & Wilmer L.L.P.**<br>Paul W. Shakespear, Esq. (14113)<br>Tanya N. Lewis, Esq. (12363)<br>Gateway Tower West<br>15 West South Temple, Suite 1200<br>Salt Lake City, UT 84101-1547<br>Tel.: 801.257.1972<br>E-Mail: pshakespear@swlaw.com<br>           tlewis@swlaw.com | **BLANK ROME LLP**<br>Michael P. Trainor, Esq. (*Pro Hac*)<br>One Logan Square<br>130 N. 18th Street<br>Philadelphia, PA 19103<br>Tel: (215) 569-5685<br>E-Mail: Mtrainor@BlankRome.com |

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TAMRA STEPHENSON,<br><br>         Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT AND TIM BOLIN,<br><br>         Defendants. | Case No. 4:21-cv-00020-DN-PK<br><br>**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Midland Credit Management Inc. ("Midland") and Tim Bolin ("Bolin")(together, "Defendants") respectfully submit this joint Memorandum of Law in Support of their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 12(c) ("Rule 12(c)")(the "Motion").

### PRELIMINARY STATEMENT

Plaintiff commenced this lawsuit alleging that Defendants violated the Fair Debt Collections Practices Act, 15 U.S.C. 1692, *et seq* ("FDCPA" or the "Act"), the Utah Consumer

1

Sales Practices Act ("UCSPA"), and common law, by sending correspondence which threatened to take legal action relating to a severely delinquent credit card debt that Plaintiff owes to Midland. In particular, Plaintiff claims that Midland sent certain Letters[1] in violation of sections 1692e of the FDCPA because they threaten to refer Plaintiff's long-unpaid account to a law firm to be reviewed by an attorney for possible legal options. (Comp. ¶¶ 69-76, ECF No. 2). Without any support, Plaintiff asserts that these Letters were misleading because Midland never sent the Plaintiff's account to an attorney for legal review. Plaintiff also incorrectly asserts that Midland never intended to sue Plaintiff and does not sue on defaulted debts in the state of Utah.

Simply, Plaintiff's allegations are patently false, and both she and her counsel know it. Midland did indeed refer Plaintiff's account to counsel, and both Plaintiff and her attorney corresponded with that counsel. Moreover, Midland does indeed sue on defaulted debts in the state of Utah, and a simple docket search by Plaintiff and her counsel could have very easily confirmed such a fact.

As set forth clearly in Defendants' Answer (ECF No. 7), Midland hired counsel in connection with Plaintiff's past due debt. In fact, counsel for Midland - Johnson Mark, LLC - sent two (2) separate letters to Plaintiff advising, in part, of their representation of Midland in

---

[1] The "Letters" for purposes of this Memorandum refer to Exhibit A through E of the Answer which are more fully identified as follows:
- Exhibit A - December 6, 2019 letter from Midland to Plaintiff, ECF No. 7-1;
- Exhibit B – February 21, 2020 letter from Midland to Plaintiff, ECF No. 7-2;
- Exhibit C – June 17, 2020 letter from Midland to Plaintiff, ECF No. 7-3;
- Exhibit 2 to Certification of Kimberly Larsen which was provided with Defendants' Answer and which is a letter dated December 11, 2020 from Johnson Mark LLC, counsel for Midland, to Plaintiff. ECF No. 7-4;
- Exhibit E – February 9, 2021 letter from Johnson Mark, LLC, counsel for Midland to both Plaintiff and Plaintiff's counsel, Eric Stephenson, ECF No. 7-5

connection with the debt owed by Plaintiff. One of those letters (ECF No. 7-5) was specifically addressed to both Plaintiff and her counsel. Therefore, it is completely improper for Plaintiff and her counsel to suggest that Midland neither intended to, nor did, refer the debt to counsel.

It is even more egregious for Plaintiff to sue a Midland employee, Tim Bolin, who is referenced in the Letters, when Plaintiff – and her counsel – know that the claims are patently false. Plaintiff makes no separate factual allegations of wrongdoing against Mr. Bolin outside the confines of his employment with Midland and that are not otherwise based on the Letters. Thus, Plaintiff's inclusion of Mr. Bolin as a defendant is entirely improper, without factual support and borders on harassment. For these reasons, and as described more fully below, all of Plaintiff's claims fail and Defendants' Motion should be granted in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Plaintiff's Account

On or about December 20, 2009, Plaintiff opened a credit card account that was issued by Synchrony Bank ("Synchrony")(*See* Certification of Kimberly Larsen attached to Defendants' Answer as Ex. D, hereafter "Larsen Certification" ECF No. 7-4 ¶ 4). All rights, title and interest in and to the Account were sold by Synchrony to Midland on January 29, 2019. (Larsen Certification, 7-4 ¶ 6).[2]

### B. Midland's Correspondence with Plaintiff

Via correspondence dated December 6, 2019, Midland notified Plaintiff of, in part, the delinquency of the debt and the potential that Midland "may proceed with forwarding this account

---

[2] Plaintiff does not deny that she owes this debt, nor does she allege the debt was not in default when she was contacted by Midland.

to an attorney." (Comp., ECF No. 2 ¶ 12; Answer ECF No. 7 ¶¶ 12, 20 – December 6, 2019 Pre-Legal Notification). Midland next sent Plaintiff a letter dated February 21, 2020 (the "February Letter") (Answer Ex B, ECF No. 7-2) which advised Plaintiff of important information such as (1) a toll free telephone number for Plaintiff to discuss the debt with Midland; (2) Midland's website; and (3) instructions for methods of payment, including by phone, online and by mail. [3] (A copy of the February Letter is attached as Ex. 2 to Midland's Answer, ECF No. 7-2; Comp. ¶ 23). The February Letter is from Midland, and refers to one of its employees, Bolin. It also provides a phone number to the Pre-Legal Department for Plaintiff to discuss her delinquency. *Id*. Nowhere on the February Letter does it indicate that the letter is from an attorney. Instead, the letter states, in part, as follows: "If you do not reply, we plan on sending your account to an attorney in the state of UT." The letter continues:

> **What will an attorney do?**
> We intend to have a lawsuit filed against you. Before a lawsuit can be filed, an attorney must review your account. If the attorney determines there is cause for a suit, they will:
> • Commence a lawsuit in a local court
> • Serve a copy of the lawsuit personally on you, which could be done by a process server, a sheriff, or other means
> • Seek to obtain a judgment

Midland also sent Plaintiff a letter dated June 17, 2020 ("the June Letter"), which is titled "Final Notice Extension" and "Pre-Legal Notice." (Ex. C to Midland Answer, ECF No. 7-3; Comp. ¶¶ 27-28). Similar to the February Letter, the June Letter is from Midland and refers to Bolin solely in his capacity as an employee of Midland. The June Letter also provides helpful information to Plaintiff, including options for payment and a toll-free number to contact Midland. *Id*. The letter also clearly explains that Plaintiff is being provided additional time to avoid attorney

---

[3] Plaintiff does not allege that the Letter is an initial communication or validation notice subject to 15 U.S.C. § 1692g.

review of the debt due to tough times – i.e., the global COVID-19 pandemic[4] - and provided additional options for Plaintiff to avoid an attorney review.

    C.  *Midland's Referral To Counsel*

As Plaintiff and her counsel are aware, Plaintiff's Account was sent to the law firm of Johnson Mark LLC on or about December 9, 2020 for legal review. (Midland Certification ¶ 7, ECF No. 7-4).  On December 11, 2020, Johnson Mark LLC sent Plaintiff a letter advising of its representation of Midland in connection with the Plaintiff's Account. (Id. at ¶ 8).  A lawsuit against Plaintiff was not yet initiated because Plaintiff received the December 11, 2020 letter and disputed the debt at that time. (Midland Answer ¶ 34, ECF No. 7). In response to correspondence from Plaintiff, Midland's counsel then sent Plaintiff's counsel[5] a debt verification letter on February 9, 2021, days before this baseless action was filed. (Midland Answer Ex. E, ECF No. 7-5).

    D.    *Plaintiff's Complaint*

On February 12, 2021, Plaintiff filed her Complaint.  On April 19, 2021, Defendants filed their Answer to the Complaint.

---

[4] Defendants request this Court take Judicial Notice that a State of Emergency was declared in Utah on March 6, 2020 by then-Governor Gary Herbert due to COVID-19.  See https://coronavirus.utah.gov

[5] Upon information and belief, Plaintiff's counsel is her spouse and participated in telephone calls and correspondence with Midland and its attorneys.  Therefore, Plaintiff's counsel is a fact witness to this litigation, which would be in violation of Utah Sup. Ct. R. Prof. Prac. 3.7 stating "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."

## ARGUMENT

### I.  APPLICABLE STANDARD OF REVIEW

#### A.  Standard of Review Under Rule 12(c)

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013). To survive a Rule 12(c) motion, a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, [because] it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). The Court will grant a motion for judgment on the pleadings if the moving party establishes "that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA,* 442 F.3d 1239, 1244 (10th Cir. 2006).

In ruling on a motion for judgment on the pleadings, the Court may consider the complaint, any material that is attached to the complaint, and the answer. *See Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

158411.01291/125774743v.8
4852-6533-7322.3

### B.     FDCPA and the Least Sophisticated Consumer Standard

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

For most courts, "the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019)(citing *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008)); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (the "least sophisticated debtor standard has . . . been adopted by all federal appellate courts that have considered the issue."). The Tenth Circuit "has not explicitly adopted the least sophisticated consumer standard, but it has applied the test in at least two, albeit unpublished, opinions." *Smith v. Johnson Mark LLC,* No. 1:20-cv-00032-RJS-DAO, 2021 U.S. Dist. LEXIS 3268, at *5 (D. Utah Jan. 7, 2021); see also *Chadwick v. Bonneville Billing & Collections, Inc.*, No. 1:20-CV-132-TS, 2021 U.S. Dist. LEXIS 57757, at *3 (D. Utah Mar. 25, 2021)(applying the least sophisticated consumer test).

However, "the least sophisticated consumer standard incorporates a 'concept of reasonableness' that is presumed to guide even the most naïve debtor." *Clomon*, 988 F.2d at 1319. Moreover, "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Ferree v. Marianos*, No. 97-6061, 1997 U.S. App. LEXIS 30361, at *5 (10th Cir. Nov. 3, 1997) citing *Clomon*, 988 F.2d at 1319. This hypothetical consumer is a "naïve" and "credulous"

7

person. *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015)(*citations omitted*). She does not have "the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). However, the least sophisticated consumer "is neither irrational nor a dolt." *Lotito v. Recovery Assocs. Inc.*, No. 13-CV-5833 SJF-AKT, 2014 WL 4659464, at *5 (E.D.N.Y. Sept. 17, 2014) (*citations omitted*).

Whether or not a collection letter violates the FDCPA is a question of law. *See Garrett v. Fin. Bus. & Consumer Sols., Inc.,* Civil Action No. 20-cv-02754-MEH, 2021 U.S. Dist. LEXIS 68094, at *8 (D. Colo. Apr. 8, 2021) (analyzing a collection letter upon finding "[i]f the language of a debt collection letter is undisputed, the question whether it violated §1692e or §1692g may be decided as a matter of law."); *Kolbasyuk*, 918 F.3d at 242 (upholding the district court's finding that the letter did not violate 15 U.S.C. §§1692e and 1692g as a matter of law); *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2d Cir. 2003)(finding it proper for a district court to determine on the pleadings that no FDCPA claim could be stated based on the language of a letter); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 296, 311 (2d Cir. 2003)(finding that the district court properly dismissed an FDCPA claim based on the language of the collection letter).

**II.   JUDGMENT IN FAVOR OF DEFENDANTS ON ALL CLAIMS MADE BY PLAINTIFF MUST BE ENTERED BECAUSE PLAINTIFF'S CLAIMS ARE PATENTLY FALSE.**

At the core of the Complaint, Plaintiff alleges that the Letters violate 15 U.S.C. §§1692e, the UCSPA, and constitute fraud because Midland – and by extension its employee Bolin - threatened to refer Plaintiff's unpaid account to a law firm to be reviewed by an attorney for possible legal options and that Midland never did, nor intended to, refer the account to its counsel.

( Comp. ¶¶ 69-76, ECF No. 2).  As is clear from the Complaint and the Answer, Plaintiff's claims are patently false.  Midland did indeed refer the Account to its counsel – as it was permitted to do – and counsel communicated on multiple occasions with Plaintiff <u>and her counsel</u>.  Therefore, Plaintiff's claims are blatantly false and judgment in favor of Defendants, on all claims, must be entered.

      **A.**    **Any FDCPA Claims Relating to Communications Prior to February 12, 2020 are Time Barred.**

At a foundational level, lawsuits arising under the FDCPA must be brought "within one year from the date on which the violation occurs." (15 U.S.C. § 1692k(d)).  The Complaint references communications, including correspondence dated December 6, 2019, which are time barred under the FDCPA. (Comp. ¶ 12).  The Complaint was filed on February 12, 2021. (Comp., ECF No. 2). Therefore, any claims based on communications prior to February 12, 2020 are time-barred and should not be considered by this Court.

      **B.**    **Plaintiff's Claim Under Section 1692e(5) Is Factually Unsupported.**

To allege a violation of section 1692e(5), a plaintiff must show that defendants (1) threat[ened] to take any action, (2) that cannot legally be taken or that was not intended to be taken. <u>15 U.S.C. § 1692e(5)</u>.  Plaintiff's cannot succeed on either prong.

          **1.**    **The Letters Do Not Threaten Legal Action That Cannot Legally Be Taken Or That Was Not Intended To Be Taken.**

Courts throughout the country – including the 10th Circuit - have held that letters that "simply state that the debt collector 'may consider additional remedies' and that the accounts were placed with an attorney for 'such action as necessary'" are equivocal statements that do not give rise to liability under Section 1692e and Section 1692e(5).  *Avila*, 644 F. App'x at 22; *see Lewis*

9

*v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 13-cv-01375-PAB-KLM, 2013 U.S. Dist. LEXIS 186322, 2014 WL 1217948, at *19 (D. Colo. Mar. 24, 2014) (holding that the debtor failed to state a claim under 15 U.S.C. § 1692e(5) because "[the debt collector] had a legal right to foreclose".) *See generally Fouts v. Express Recovery Servs.*, 602 F. App'x 417 (10th Cir. 2015)(unpublished) (addressing claim that debt collector "violated § 1692e(2)(A) and e(5) by threatening garnishment without having a judgment."). Accordingly, "even where communications specifically refer to legal action, a threat does not exist where the references are couched in terms of mere possibility." *Sorel v. Capital One Servs., LLC*, No. 3:11-CV-703 SRU, 2012 WL 3596487, at *6 (D. Conn. Aug. 20, 2012)[6]; *see also Wood v. Capital One Servs., LLC*, No. 5:09-CV-1445 NPM/DEP, 2012 WL 4364494, at *9 (N.D.N.Y. Sept. 21, 2012) (adopting *Sorel* analysis); *Quamina v. Retrieval Masters Creditors Bureau, Inc.*, No. 10-CV-01852 ERK RER, 2011 WL 1099483, at *3 (E.D.N.Y. Mar. 22, 2011)(granting defendant judgment on the pleadings where letter did not explicitly threaten legal action).

The respective letters in *Sorel, Wood,* and *Quamina*, each of which was held not to be a violation of 15 U.S.C. § 1692e(5), show that the Letters in this action do not violate any provision of the FDCPA:

- *Sorel* - the letter stated "At this point in time, your account has been pre-qualified by Capital One as lawsuit eligible. If we do not hear from you regarding this important business matter, your account may be subject to litigation. If this were to occur, your

---

[6] Citing *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 274 (D. Conn. 2007); *Madonna v. Acad. Collection Serv., Inc.*, 1997 WL 530101, at *1–2 (D. Conn. Aug. 12, 1997) (holding that letters describing the possibility of initiation of legal action and possible consequences of litigation were not threats, but merely communicated that litigation was one possible course of action).

10

> account may incur additional fees and penalties if allowed under the state law of your jurisdiction." 2012 WL 3596487 at *2.
>
> - *Wood* – the letter stated "Your account is seriously delinquent and meets the guidelines for legal action if payment is not made toward the amount shown above." 2012 WL 4364494, at *3. The letter further stated that "No decision has been made to sue you yet, so you still have options." *Id.*
>
> - *Quamina* - the letter stated, in relevant part, that "You have apparently chosen to ignore all of our requests for payment. However, be advised that our client has authorized us to continue our collection efforts until you have honored this outstanding obligation … To avoid further contact, **send your payment immediately**." 2011 WL 1099483, at *1 (emphasis original).

Almost precisely as the letters in *Sorel, Wood* and *Quamina*, the February Letter states that "[i]f you do not reply, we plan on sending your account to an attorney in the state of Utah" and that a lawsuit would commence only "if the attorney determines there is cause for a suit." (Midland Answer Ex. B; ECF No. 7-2)(Comp., Ex. 1, ECF No. 1-1)(*emphasis added*). Such language makes it clear that Midland was only "planning" to send the account to its counsel but was also clearly allowing Plaintiff the opportunity to avoid legal action. The February Letter also makes clear that legal action is not imminent by stating that Plaintiff can call "to discuss what options are available" and "we will work to avoid sending your account to an attorney." *Id*. Additionally, the June Letter provides three different options to Plaintiff, including making no immediate payment as long as she makes contact prior to July 17, 2020. (Midland Answer Ex. C; ECF No. 7-3).

      Again, letters that "simply state that the debt collector 'may consider additional remedies'

11

and that the accounts were placed with an attorney for 'such action as necessary'" are equivocal statements that do not give rise to liability under Section 1692e and Section 1692e(5). *Avila*, 644 F. App'x at 22. As was the case in *Sorel, Wood* and *Quamina*, the clear language in the February and June Letters shows that Midland gave Plaintiff additional remedies to avoid the possibility of a legal referral and subsequent lawsuit. Whether considered on a least sophisticated consumer standard or otherwise, such language is not from an attorney and clearly doesn't threaten immediate legal action. Therefore, the face of the such letters was permissible under the FDCPA and no action against either Midland or Bolin can stand.

### 2. Plaintiff's Claim That Midland Did Not Intend to Refer Her Debt to Counsel Is Also Patently False.

Plaintiff also falsely claims that Midland never actually intended to proceed with legal action against her and that, as a result, the Letters violated the FDCPA. Specifically, Plaintiff contends that "Midland never sent the alleged debt to an attorney for a review" and that "on information and belief, Midland never intended or was never able to sue Plaintiff." (Comp. ¶¶ 38.)[7]

To meet her burden the Plaintiff must prove that the possibility of a referral to an attorney could be "ruled out" because, for example, "a creditor ha[s] a fixed practice of not bringing suits against customers." *See Sluys v. Hand,* 831 F. Supp. 321, 326-27 (S.D.N.Y. 1993); *Baptist v. Glob. Holding & Inv. Co.*, No. CIVA04CV2365(DGT), 2007 WL 1989450, at *5 (E.D.N.Y. July 9,

---

[7] Plaintiff uses the absence of specific factual allegations to portray the FDCPA as a statutory blank canvas with unlimited possibilities for compulsory liability supported by mere conclusory statements. Plaintiff's bare legal claims may serve to divert attention from the account in collections; however, "[t]he FDCPA is not a debt-relief statute… and courts should not indulge thinly veiled attempts to use it as one." *Kraus v. Prof'l Bureau of Collections of Maryland, Inc.*, 281 F. Supp. 3d 312, 322 (E.D.N.Y. 2017).

2007)("To successfully prove a threat was in violation of § 1692e(5) based on lack of intent to follow through, the plaintiff carries the burden of showing that the possibility of a lawsuit could be ruled out."). Here, Plaintiff's "unadorned, the defendant-harmed-me-accusations that lack factual content"[8] do not plausibly state a claim against Defendants, and the Court need not accept Plaintiff's patently false interpretation of the Letters. *See Allen v. Advanced Call Ctr. Techs., L.L.C.*, No. 18-CV-2873 (RRM) (AYS), 2019 WL 4887683, at *7 (E.D.N.Y. Sept. 30, 2019)("The least sophisticated consumer would not reasonably read Defendant's letter in the way Plaintiff suggests, and the Court need not accept their idiosyncratic interpretation.")

Plaintiff cannot plausibly state facts in support of the allegation that Midland did not intend to forward Plaintiff's account to an attorney because, in reality, it did! Again, Plaintiff corresponded at least twice with Midland's counsel before this lawsuit was filed. So, any suggestion that Midland did not intend to refer the matter to counsel is false.

Further, the fact that a lawsuit had not been filed between the December 2020 referral to Johnson Mark LLC and the February 12, 2021 filing of this lawsuit certainly does not raise to the level of some devious scheme by Defendants to violate the FDCPA or to fraudulently motivate Plaintiff to pay on an account that is severely delinquent.

Again, Midland had given Plaintiff more than ample time to try and address her delinquency. Having failed to repay her debt, Midland – as it is permitted to do – notified Plaintiff that it planned to refer the matter for legal consideration. Midland, again well within its rights, did indeed refer the matter to counsel for consideration. Prior to filing a lawsuit, counsel corresponded

---

[8] *See Altieri v. Overton, Russell, Doerr, & Donovan, LLP,* 281 F. Supp. 3d 254, 267–68 (N.D.N.Y. 2017).

with Plaintiff and her attorney regarding the debt. Such activity by Midland – under any metric – was proper and judgment in favor of Defendants must be entered.

### C. Plaintiff's Sections 1692e or 1692e(10) Claims Are Factually Unsupported.[9]

Plaintiff also claims that Defendant's letters "were false, deceptive, unfair, and misleading and were made for the purposes of misleading consumers." (Comp. ¶ 72). However, Plaintiff does not allege how Midland's conduct was false, deceptive, or misleading. (*See* Comp.) And, as discussed above there is no basis to suggest that Midland "never sent" Plaintiff's account to an attorney because, again, the account was referred to counsel. Thus, Plaintiff's claim under Section 1692e is factually unsupported. *See Wood*, 2012 WL 4364494 at *9-11 (no violation of Section 1692, et seq. despite plaintiff's assertions of communication that falsely threatened legal action).

Plaintiff's Complaint also relies upon the same "factual allegations" described above in assuming that Defendants violated 15 U.S.C. §1692e(10).[10] (Comp. ¶ 42, ECF No. 2) And, yet again, Plaintiff alleges no additional facts – aside from the false statement that Midland didn't intend to refer the debt to counsel. Therefore, Plaintiff's claim under Section 1692e(10) is also factually unsupported. *See Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 160-61 (E.D.N.Y. 2005)("Plaintiff has also not submitted any evidence to support her contention that this statement

---

[9] Paragraph 48 of the Complaint also lists almost the entirety of every provision under the FDCPA while also stating "amongst others". Also, Count I merely lists 15 U.S.C. §§ 1692 without any additional information. (Comp. ¶¶ 63-76). However, Plaintiff fails to otherwise specifically identify what other sections of the FDCPA form the basis for any claims against Defendants. Thus, to the extent Plaintiff is attempting to allege any other violations under any other section of the FDCPA, there are simply no facts to support such claims and Plaintiff's broad and sloppy pleading – by itself – cannot form the basis for any relief.

[10] "Without limiting the general application of the foregoing, the following conduct is a violation of this section: The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

14

was a threat that it could not make. Further, because the Follow-up Letter was neither deceptive nor false, it does not violate § 1692e(10).")

### D. Plaintiff's UCSPA Claim Is Also Factually Unsupported.

Plaintiff's Second Count, which alleges a violation under the UCSPA, is also factually unsupported for the same reasons her FDCPA claims fail. As was the case with her FDCPA claim, Plaintiff falsely alleges that Defendants violated the UCSPA by (1) when threatening "to sue Plaintiff they knew they would not carry out that threat" (2) threatening "to send Plaintiff's account to an attorney review they knew they would not carry out that threat" and (3) because Defendants never sue Utah customers. (Comp. ¶¶ 82-84). Dismissal of a UCSPA claim is appropriate where "the law simply affords no relief." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011). The UCSPA expressly provides that it "does not apply to . . . an act or practice required **or specifically permitted by or under federal law**, or by or under state law." Utah Code § 13-11-22(1)(a)(emphasis added).

As set forth above at length, not only are Plaintiff's claims regarding Midland's referral of her debt to counsel false, the alleged violations upon which Plaintiff seeks to recover are indeed permitted under the FDCPA. Therefore, Defendants' actions were permitted under federal law, specifically the FDCPA, and no claim under the UCSPA can stand.

Additionally, and as set forth above, Plaintiff claims that "Midland does not sue Utah consumers and has not sued any Utah consumers in the last two years." (Comp. ¶¶ 35-36). This too is a patently false statement because Midland has indeed sued individuals for their failure to make payments on debts recently and most certainly in the past two (2) years. (Larsen Certification ¶¶ 7-9, ECF No. 7-4 stating, in part: "Midland has initiated lawsuits in the State of Utah in

15

connection with its attempt to obtain payment for past due amounts owed to Midland on various credit card and other accounts, including in 2020.") This information was available to Plaintiff and her attorney via a search of publicly available court records. Plaintiff's failure to take even this most basic action before suing Midland and one of its employees is, at best, poor form. As a result, the UCSPA cannot form a basis for relief and judgment in favor of Defendants on Plaintiff's UCSPA claims is warranted.

### E. There Are No Facts Which Support a Claim For Fraud.

Plaintiff next alleged, at Count Three, that Defendants committed fraud and made fraudulent misrepresentations by – again - never intending to sue Plaintiff nor having the ability to sue Plaintiff. (Comp. ¶¶ 93-107). In Utah, the elements of fraud are:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he [or she] had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his [or her] injury and damage.

*Carlton v. Brown*, 2014 UT 6, ¶ 38, 323 P.3d 571, 582 (internal citations omitted). Plaintiff cannot meet the all nine elements of fraud.

As stated above, there were no false statements made to Plaintiff as Midland not only intended to send her account to a law firm, it did in fact do so. Plaintiff was aware of this fact **before** filing this matter. Additionally, Plaintiff cannot show any justifiable reliance on the alleged false statements. Had she relied on the Plaintiff's statements she would have paid the debt. Plaintiff took no such action. As a result, Midland referred the Plaintiff's debt to counsel for potential legal action – as it said it would. Thus, the suggestion that Midland and its employee, Bolin, were

16

somehow embroiled in a fraudulent scheme to incite Plaintiff to make payment on an account that is clearly in default is absurd. As there are no facts to support any claim of fraud, judgment in favor of Defendants on Plaintiff's fraud claim is necessary.

**F.   All claims against Bolin fail for the same reasons that the claims against Midland fail.**

Even if the Court were to conclude that there is some basis upon which Plaintiff can proceed with any of her claims against Midland – which there is not – at the very least the claims against Bolin must be dismissed. Plaintiff makes no separate factual allegations to suggest that Bolin did anything wrong in his individual capacity. Instead, the entirety of the claims against Bolin are based on the same facts alleged against his employer, Midland. Thus, all claims against Bolin are equally unsupported in the same manner and for the same reasons why they fail as to Midland.

**III.   CONCLUSION**

For all the reasons discussed above, Defendants respectfully request that the Court enter an Order for judgment on the pleadings in favor of Defendants and against Plaintiff on all counts. Defendants also ask that the Court grant such other and further relief as it deems to be just and appropriate.

158411.01291/125774743v.8
4852-6533-7322.3

Dated: May 18, 2021

                              Respectfully submitted,

                              /s/ Tanya N. Lewis
                              Paul W. Shakespear
                              Tanya N. Lewis
                              Snell & Wilmer L.L.P.
                              Gateway Tower West
                              15 West South Temple, Suite 1200
                              Salt Lake City, UT 84101-1547
                              Tel.: 801.257.1972
                              E-Mail: pshakespear@swlaw.com
                                          tlewis@swlaw.com

                              *And*

                              /s/ *Michael P. Trainor*
                              *Admitted Pro Hac Vice*
                              Michael P. Trainor
                              BLANK ROME LLP
                              One Logan Square
                              130 N. 18th Street
                              Philadelphia, PA 19103
                              (215) 569-5500
                              mtrainor@BlankRome.com
                              *Attorneys for Defendants – Midland Funding, LLC and Tim Bolin*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** was served via the Court's ECF electronic filing system to the following parties:

Eric Stephenson
STEPHENSON LAW FIRM
250 N Redcliffs Dr 4B Ste 254
Saint George, UT 84790
eric@utahjustice.com

*Attorney for Plaintiff*

DATED: May 18, 2021

/s/ Susan Ballif

158411.01291/125774743v.8
4852-6533-7322.3