Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| TAMRA STEPHENSON,<br><br>Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT and TIM BOLIN<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case Number: 4:21-cv-00020<br>Judge: David Nuffer |

Plaintiff respectfully submits this Memorandum in Opposition to Motion for Judgment on the Pleadings and respectfully requests this Court to deny Defendants' motion for the reasons set forth herein.

## INTRODUCTION

Despite the well-established standard of review Defendants argue that judgment should be rendered in their favor on all of Plaintiff's claims even though Plaintiff has plausibly stated facts to support each claim. Plaintiff stated claims for relief under the Fair Debt Collection Practices Act, the Utah Consumer Sales Practices Act, and for fraud. Defendants carry the burden to show there are no material facts in dispute on those issues but failed to meet that burden. They are therefore not entitled to judgment.

## RESPONSE TO STATEMENT OF FACTS

Plaintiff objects to Defendants' Statement of Facts and Procedural History on the grounds that the numbered paragraphs are not short, plain, or concise. Instead they are compound, confusing, argumentative, and ambiguous. The statements also include improper and unsupported legal conclusions. The Statement therefore appears to be presented for improper purposes such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. This is not a motion for summary judgment. Direct responses to each of Defendants' Statements are therefore not required under the Federal Rules of Civil Procedure or the Local Rules of Practice. Accordingly, Plaintiff denies the Statement in its entirety. The proper statements of fact are set forth in a short, plain, and concise manner in the Complaint (ECF No. 2) and Answer (ECF No. 7) and fully incorporated herein.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides a mechanism for judgment to be entered by the Court based on the pleadings filed.[1] Such a motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss.[2] Under that standard, the court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party.[3] The Court must also make all reasonable inferences in favor of the nonmoving party.[4] A motion for judgment on the pleadings against a

---

[1] Fed.R.Civ.P. 12(c)
[2] *See Turner v. City of Tulsa*, 525 Fed.Appx. 771, 772 (10th Cir. 2013)
[3] *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir.1999)
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

plaintiff will be granted only when the factual allegations of the complaint fail to state a claim for relief that is plausible on its face,[5] or when an issue of law is dispositive.[6] Defendants can only succeed "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitled the plaintiff to relief."[7] If the allegations stated in the complaint have any facial plausibility the Defendant is not entitled to judgment.[8]

## THE FAIR DEBT COLLECTION PRACTICES ACT

The Fair Debt Collection Practices Act was enacted in 1977 for, *inter alia*, the purpose of eliminating abusive debt collection practices by debt collectors.[9] The legislative history of the passage of the FDCPA explains the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."[10]

Examples of particular practices that debt collectors are forbidden to employ are set forth in the statute.[11] The list, however, is non-exhaustive, and the

---

[5] *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)
[6] *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)
[7] *Mock v. T.G. & Y. Stores Co*., 971 F.2d 522, 528 (10th Cir.1992)
[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
[9] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 398 (6th Cir.1998) (*quoting* 15 U.S.C. § 1692(e))
[10] S.Rep. No. 95–382, at 2 (1977), *reprinted* in 1977 U.S.C.C.A.N. 1695, 1696.
[11] *See* 15 U.S.C. § 1692 *et seq.*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

FDCPA generally forbids collectors from engaging in any unfair, deceptive, harassing, abusive, or unconscionable behavior.[12]

The FDCPA is considered a remedial statute and therefore "it should be construed liberally in favor of the consumer."[13] Such broad construction is necessary, "so as to effect its purpose."[14] The FDCPA is also considered a strict liability statute since it "does not ordinarily require proof of intentional violation."[15] "Proof of one violation is sufficient to support a finding of summary judgment in favor of the Plaintiff in an FDCPA action."[16]

In determining whether there is a violation of the FDCPA, courts apply the least sophisticated consumer test.[17] This objective standard, "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous."[18] The least sophisticated consumer standard is a low standard and "is consistent with the norms that courts have traditionally applied in consumer-protection law."[19] For example, "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor."[20] Accordingly, "any lender-debtor

---

[12] *Id.*
[13] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)
[14] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[15] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[16] *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn.1990)
[17] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *see also Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1329 (D. Utah 1997)
[18] *Id.* at 1318-1319
[19] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[20] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (*quoting Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000))

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor."[21]

## ARGUMENT

**Defendants violated the FDCPA and the UCSPA by sending a letter that falsely represented it was Plaintiff's "Final Notice" when it was not her final notice**

Under the Fair Debt Collection Practices Act debt collectors are prohibited from falsely representing "the character, amount, or legal status of any debt."[22] They are also more generally prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[23] The FDCPA also prohibits making any "threat to take any action that cannot legally be taken or that is not intended to be taken."[24] The Act also prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."[25] The Utah Consumer Sales Practices Act also prohibits false representations made in connection with a consumer transaction.[26] The UCSPA similarly prohibits any "unconscionable act or practice … whether it occurs before, during, or after the transaction."[27] Defendants squarely violated each of those prohibitions.

Defendants jointly sent Plaintiff a collection letter on February 21, 2020.[28] In that letter they unequivocally represented that the letter was Plaintiff's "FINAL

---

[21] *Brown*, 464 F.3d at 454; *Gallegos v. LVNV Funding LLC*, 169 F.Supp.3d 1235, 1245 (2016)
[22] 15 U.S.C. § 1692e(2)(A)
[23] 15 U.S.C. § 1692e(10)
[24] 15 U.S.C. § 1692e(5) and 1692f
[25] 15 U.S.C. § 1692f
[26] Utah Code Ann. § 13-11-4(1)
[27] Utah Code Ann. § 13-11-5(1)
[28] Answer ¶¶ 23; Exhibit P-1

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

NOTICE" before an attorney review and litigation would occur.[29] Defendants did not just represent it was her last opportunity to stop the attorney review and lawsuit however. They repeatedly and prominently employed various linguistic, visual, and typographical elements to emphasize that point. The most prominent of those elements was the inclusion of a red circular "FINAL NOTICE" stamp at the top of the letter.[30]



The letter also included various other statements to bolster the false notion that the letter was Plaintiff's final opportunity to resolve the matter. For example, the letter unequivocally stated in the top center of the page in bold, centered, and underlined letters:

"**<u>IMPORTANT NOTICE – PLEASE READ CAREFULLY</u>**

**<u>FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW</u>**"[31]

---

[29] Exhibit P-1 Final Notice Letter *(emphasis in original)*
[30] *Id.*
[31] *Id.*

The Final Notice letter also contained bold white capital letters on a black solid background stating: **ATTORNEY REVIEW PLANNED**

Digging deeper into the letter also further verifies Defendants' intention was to assure Plaintiff believed this letter was her last opportunity. Foreboding checklists prominently explained in clear terms what their attorney would do when he reviews the account and how a judgment could impact the Plaintiff by triggering a lawsuit, liens, garnishments, and other asset seizures.[32]

If there was any doubt remaining about the perceived urgency of the letter that doubt would be quickly dispelled by reading  the various additional warnings and threats throughout the Final Notice letter such as "call our Pre-Legal department" and "[I]f you do not reply, we plan on sending your account to an attorney in the state of UT."[33] The letter even contained a postscript reinforcing the imminence of the threats. "PS. Your prompt attention is necessary to avoid the possibility of attorney review."[34] The Final Notice letter was undisputedly representing to be Plaintiff's final opportunity to pay or face litigation.[35] The only reasonable inference that could be made given those threats, the prominent use of persuasive typographical elements, and the actual language of the letter claiming to be Plaintiff's the last opportunity to avoid litigation is that Defendants' next step was to send the account for the promised attorney review and litigation.

The letter was not ambiguous. It outlined the entire litigation process by overtly threatening to have an attorney "[c]ommence a lawsuit," "[s]erve a copy

---

[32] Exhibit P-1 Final Notice Letter
[33] *Id.*
[34] *Id.*
[35] *Id.*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

of the lawsuit personally" on the Plaintiff, "[s]eek to obtain a judgment" against the Plaintiff.[36] The letter even described the post-judgment remedies against the Plaintiff such as obtaining a lien against her property, garnishing her wages or bank accounts, and obtaining information about her assets.[37] Despite the forcefulness and detail of the letter, all of those statements were false. The "Final Notice" letter was not Plaintiff's final opportunity and litigation was not imminently pending.[38]

Rather than send the account for the threatened attorney review and litigation, Defendant waited four months and then sent Plaintiff a "Final Notice Extension" letter.[39] In other words, Defendant did not carry out its threat to sue and send the account for an attorney review. Defendant will no doubt argue that third letter was somehow a courtesy to the Plaintiff for which she should be grateful but in reality that letter established that Defendant's Final Notice letter was not Plaintiff's final notice. It also proves Defendants' Pre-Legal Notification letter sent almost seven months earlier was deceptive in representing itself so urgently since it too was nowhere near as urgent as Defendants claimed.[40]

Under the least sophisticated consumer standard the fraudulent and deceptive nature of these letters is without question. As intended by the Defendants the least sophisticated consumer would have believed all of the Defendants' threats and representations. This is true even though the representations and threats were patently false. The "Final Notice" letter was not

---

[36] Exhibit P-1
[37] Exhibit P-1
[38] Answer ¶ 34; Exhibit P-2 Final Notice Extension Letter
[39] Exhibit P-2 Final Notice Extension Letter
[40] Exhibit P-3 Pre-Legal Notification Letter

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff's final notice, Plaintiff's "prompt attention" was not "necessary to avoid the possibility of attorney review" or the commencement of a lawsuit, and Plaintiff's failure to reply did not result in the promised attorney review or litigation.[41] Referring to their "pre-legal department" also cements the false notion that the matter was urgent enough to need an immediate reaction from Plaintiff when it actually was not at all urgent since Defendants' intention was to wait and then send another letter rather than actually carrying out its threats.[42] Indeed, failing to reply bought Plaintiff nearly a year of additional time and resulted in at least one additional communication before any attorney ever touched the matter.[43] It is undisputed that Plaintiffs prompt attention was not "necessary to avoid the possibility of attorney review."[44] All she had to do was ignore letter.

In presenting the letter as Plaintiff's "final notice" before an attorney review or litigation would occur Defendants falsely represented that the legal status of the debt was much closer to litigation than it actually was. Placing the red "**FINAL NOTICE**" stamp on the letter by itself created the false representation that litigation was imminent when it was not. On its face the letter actually confirms that was the intent as it plainly states in bold, all capital, and underlined letters centered on the page:

"**IMPORTANT NOTICE – PLEASE READ CAREFULLY**

**FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW**"[45]

---

[41] Exhibit P-1 Final Notice Letter
[42] Exhibit P-2
[43] Answer ¶ 34 (Confirming that the account was not sent for any attorney review until December 9, 2020); *See also* Certification of Midland Credit Management, Inc. ¶ 7)
[44] Exhibit P-1; Complaint ¶ 24.7
[45] Exhibit P-1 Final Notice Letter *(emphasis in original)*

The false urgency of the letter is especially egregious since the letter was a follow-up to the Defendants' "Pre-Legal Notification" letter sent two months or so earlier.[46] The false representations and the false urgency they combined to create plainly and inexcusably violate sections 1692e(2), 1692(e)(5), and 1692e(10) of the FDCPA and the deceptive and unconscionable prohibitions of the Utah Consumer Sales Practices Act since each of those subsections outright prohibit any form of deception or subterfuge in collecting debt.[47]

In addition to be being facially deceptive, a collection notice also violates the FDCPA if a debtor would reasonably believe that the notices threaten legal action but the debt collector does not intend to take legal action.[48] In addition to violating the sections of the FDCPA prohibiting deception, threats to take legal action that are not actually intended also constitute unfair or unconscionable means to collect or attempt to collect any debt in violation of the FDCPA and UCSPA.[49]

Because the Court "must accept these allegations as true" for purposes of a Rule 12(c) motion, "the allegations plausibly make out a violation of section 1692e(5) and (10).[50] On those grounds alone the Court must deny Defendants' request.[51] Because the allegations stated in the complaint have a facial plausibility the Defendant is not entitled to judgment.[52] Taken as a whole and in light of the

---

[46] Exhibit P-2 Pre-Legal Notification Letter
[47] Utah Code Ann. §§ 13-11-4 and 13-11-5
[48] *United States v. National Financial Services, Inc.,* 98 F.3d 131, 136 (Cir. 1996)
[49] 15 U.S.C. § 1692f and Utah Code Ann. §§ 13-11-4 and 13-11-5
[50] *Gause v. Medical Business Consultants, Inc.*, 424 F.Supp.3d 1175, 1207 (2019)*(internal citations omitted)*
[51] Fed. R. Civ. P. 12(c)
[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

prior Pre-Legal Notification letter, the statements made in the Final Notice letter cannot be construed any way other than a threat that "some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment" even though that threat was later discovered to be patently false.[53] Because the letter poses a "threat to take [legal] action," as viewed through the eyes of the unsophisticated consumer, only Plaintiff could be entitled to judgment on this issue.[54]

Even if the inferences were not in Plaintiff's favor, the undisputed facts are also in her favor. It is undisputed that Defendants represented unequivocally they would send the account for an attorney review and litigation if Plaintiff did not respond to the Final Notice letter but that did not happen. Instead, Defendants waited for several months and then sent another collection letter.[55] They also waited for over a year from the first letter before actually sending the account to an attorney.[56] Even then, they only sent the account for an attorney review after Plaintiff's counsel notified them of this lawsuit.[57] The natural inference to reach from those facts is that Defendants were not initially planning to sue the Plaintiff but referred the matter to an attorney later on to both retaliate and attempt to cover up or mitigate their prior failure to follow through with their threats.

---

[53] *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (Cir. 1989)
[54] *See United States v. National Financial Servs., Inc.,* 98 F.3d 131, 136 (4th Cir.1996)
[55] Complaint ¶¶ 27-28; Exhibit P-2; Answer ¶ 27
[56] Answer ¶ 34
[57] Answer ¶ 29.5

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

**Factual questions preclude entry of judgment on the pleadings in Defendants' favor**

The Final Notice letter is addressed from the Defendants' so-called "Pre-Legal Department."[58] There is no evidence in the record however whether or not Defendants actually have a pre-legal department.[59] On the contrary, because the three letters appear to originate from different departments but are all signed by Tim Bolin, it is reasonable to conclude that there is no "pre-legal department" as claimed in the Final Notice letter.[60] If true, that representation is a ruse in violation of both the FDCPA and UCSPA and constitutes fraud. "A debt collector may not send a collection letter from a 'Pre-Legal Department,' where no legal department exists."[61]

Even if there actually is a legal department it is also possible that a least sophisticated debtor receiving the Final Notice letter "could reasonably infer that the Legal Department contains attorneys who played a role in writing or sending the letter" even though it may not.[62] Either way, "the factual question of whether [Midland] has a Legal Department is inappropriate for resolution on a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings."[63] Instead, resolution of that issue is for the finder-of-fact since there are a number of plausible inferences that can be drawn from representing a legal department is involved.[64]

---

[58] Exhibit P-1
[59] *See* Complaint; *See* Answer
[60] *Compare* Exhibits P-1, P-2, and P-3
[61] Statements of General Policy or Interpretation: Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097-02 (December 13, 1988), at 50105
[62] *Rosenau v. Unifund Corp.,* 539 F.3d 218, 223 (Cir. 2008)
[63] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 225 (Cir. 2008)
[64] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1196-1197 (Cir. 2010)

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

There is also a factual dispute pertaining to whether Defendants' use of language and typographical elements caused any overshadowing of the debt collection warnings required in all collection communications under the FDCPA. Under the FDCPA the initial communication with a debtor requires certain disclosures.[65] Other disclosures are also required within five days of that initial communication.[66] In addition to those requirements the FDCPA also requires a warning "in subsequent communications that the communication is from a debt collector."[67] The only exemption to that requirement is for formal pleadings made in connection with litigation.[68]

In this case the Defendants provided the warnings but a jury could find that they overshadowed those warnings and thus rendered them ineffective and violative of the FDCPA's mandate. For example, one of the warnings is on the back of the page rather than being included where it should be on the front. That disclosure is also in a smaller and less prominent font than many of the more foreboding elements on the page such as the giant red **FINAL NOTICE** stamp, the reverse bolded and capitalized "ATTORNEY REVIEW PLANNED" bar at the top of the front page, and the bold, all capital, and underlined sentence centered on the page that threatens:

"**<u>IMPORTANT NOTICE – PLEASE READ CAREFULLY</u>**

**<u>FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW</u>**"[69]

---

[65] 15 U.S.C. § 1692e(11)
[66] 15 U.S.C. § 1692(g)
[67] 15 U.S.C. § 1692e(11)
[68] *Id.*
[69] Exhibit P-1 Final Notice Letter *(emphasis in original)*

The various other threatening language contained in the letters as discussed previously also likely operated to overshadow the required disclosures.[70] The Final Notice Extension and Pre-Legal Notification letters also contain similar elements involving font changes, sizing, color, highlighting, and other similar elements meant to emphasize the urgency of the letters over the disclosures required by law.[71]

By using these distracting elements Plaintiff contends that Defendants unlawfully overshadowed the required disclosures.[72] To be effective, the required notices "must not be overshadowed or contradicted by other messages or notices" from the collection agency.[73] Defendants have provided no evidence to suggest that Plaintiff's allegations on this issue are factually false.[74] Accordingly, judgment on the pleadings cannot be entered in Defendants' favor on this issue.

The fraud claims also preclude judgment on the pleadings. Plaintiff alleged fraud in the Complaint while Defendants denied those allegations.[75] Those denials create factual disputes over what actually happened. Defendants contend that because they declared in conclusory fashion without any explanation

---

[70] *Id.*
[71] Exhibit P-2 and P-3
[72] Complaint ¶¶ 31-33; Answer ¶¶ 31-33
[73] Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222, (Cir. 1988) (*citing Thomas v. National Business Assistants, Inc.,* No. N82-469 (D.Conn. Oct. 5, 1984) ("inconspicuous and grossly overshadowed" notice did "not properly notify recipients of their validation of debt rights") and *Ost v. Collection Bureau, Inc*., 493 F.Supp. 701, 703 (D.N.D.1980) (communication must not be designed to "evade the spirit of the notice statute, and mislead the debtor into disregarding the notice"))
[74] *See* Answer
[75] Answer ¶¶ 93-107

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

or evidentiary support that Midland initiated lawsuits in Utah at various times that somehow magically absolves them of all wrongdoing.[76] That position is absurd.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.[77] Defendant's self-serving generic conclusory declaration does not meet that standard. On the contrary, the boilerplate declaration conspicuously omitting any factual support raises more questions than it dispels.

The declaration leaves open the factual questions of how many lawsuits Defendants filed, when they filed those lawsuits, what percentage of cases they filed lawsuits compared to not filing, what were the criteria for filing lawsuits, whether Plaintiff's alleged debt ever met that criteria, and other similar questions of fact crucial to the claims and defenses at issue.[78] Even if Midland did file other court cases in Utah that does not resolve factual questions about whether or not it was capable of filing a case against Plaintiff or whether it intended to file at the time it sent the threatening letters. The declaration also fails to address what involvement Tim Bolin had in the creation of the letters he signed, whether he had any oversight of the collections at issue, or whether he is actually available for consumers to communicate with as represented in the letters.[79] The declaration is therefore meaningless.

Judgment on the pleadings in Defendants' favor is also precluded outright because Plaintiff squarely met the remaining elements of her fraud claim.

---

[76] Certification of Midland Credit Management ¶ 9
[77] *See Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993) *(citations omitted)*
[78] *See* Certification of Midland Credit Management
[79] *Id.*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants made various false representations that they knew to be false, the
representations were made for the purpose of inducing Plaintiff to act on those
representations, Plaintiff relied on those representations not knowing they were
false, and Plaintiff acted on those representations to her detriment and injury.[80]
"Plaintiff was confused and intimidated by Defendants' false, misleading,
deceptive, and unfair threats, implications, and representations."[81] "Plaintiff
received and read each of the collection letters and believed the Defendants would
carry out their threats to have an attorney review the case and sue the Plaintiff."[82]
As a result of the fraudulent representations and the belief they were true, Plaintiff
suffered "emotional distress, humiliation, stress, anxiety, frustration, confusion,
panic, headaches, sleeplessness, stomach discomfort, pain, memory loss, and
irritability."[83]

        The court must accept those well-pleaded allegations of the Complaint as
true and construe them in the light most favorable to the Plaintiff.[84] The Court
must also make all reasonable inferences in favor of the Plaintiff.[85] It was
Defendants' burden to show there is no possibility Plaintiff could prevail on her
fraud claims but they failed to meet that burden.[86]

---

[80] Complaint ¶¶ 16, 20-30, 39, 48, 50-55, 57-62, 70-73, 76, 82-88, 90-107
[81] Complaint ¶ 73
[82] *Id*. ¶ 52
[83] *Id*. ¶ 53
[84] *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir.1999)
[85] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
[86] *See Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993) *(citations omitted*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

**None of the Defendants' conduct is exempt from the UCSPA**

Grasping at straws Defendants point out a narrowly limited exemption in the UCSPA for "an act or practice required or specifically permitted by or under federal law, or by or under state law."[87] That exemption does not even arguably apply here because the Defendants' actions were not required or permitted by law.[88] On the contrary, no statute allows or requires debt collectors to make false threats, deceptive representations, or engage in other conduct intended to invoke an artificial sense of urgency. Indeed, both statutes unequivocally prohibit such conduct.[89] Defendants carry the burden to show the exemption applies but because they failed to articulate how the violations at issue were somehow permitted by law they did not even arguably meet that burden.[90] Accordingly, the conduct of the Defendants complained of herein does not fit within this narrow exemption. The Defendants conduct is subject to all the prohibitions and requirements of the UCSPA.

**The statutes of limitations are not expired**

Defendants argue that all claims relating to its first Pre-Legal Notification letter are barred by the statute of limitations.[91] In reaching that conclusion they didn't provide any analysis or authority beyond citing to one of the applicable statutes. The reason for that conspicuous omission is because the conclusion is wrong.

---

[87] Motion for J. on the Pleadings at 15
[88] Utah Code Ann. § 13-11-22(1)(a)
[89] 15 U.S.C. § 1692 *et seq.* and Utah Code Ann. § 13-11-1 *et seq.*
[90] Utah Code Ann. § 13-11-22(2)
[91] Motion for Judgment on the Pleadings at 9

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

For starters, the statutes of limitations under the Utah Consumer Sales Practices Act and for common law fraud are not expired for any of the Plaintiff's claims. Under the Utah Consumer Sales Practices Act the statute of limitations is four years while the statute of limitations for common-law fraud is three years.[92] Accordingly, even assuming *arguendo* that the statute of limitations was expired with regard to the first Pre-Legal Notification letter under the FDCPA, they are not expired with regard to the remaining claims.

As for the FDCPA there are two possibilities since the statute of limitations begins to run on the date the illegal conduct occurred.[93] In its Pre-Legal Notification letter Defendants threatened in orange highlighted text, that "[i]f we don't hear from you or receive payment by 1/5/2020, we may proceed with forwarding this account to an attorney."[94] In large green letters it also states "**ACT NOW: Attorney review may be the next step.**"[95] The letter also boldly states that "**If your account is forwarded to an attorney, this may result in a lawsuit against you.**"[96]  If Defendants are conceding those threats were false when they sent their December 6, 2019 letter, then the statute of limitations would indeed be expired under the FDCPA for those false communications since the date the violation occurred is the governing moment.[97]

Because they deny the falsity of the representations, however, Plaintiff submits that the FDCPA violations for those false statements did not occur until a

---

[92] Utah Code Ann. § 78B-2-307(3) and 78B-2-305(3)
[93]  15 U.S.C. § 1692k(d)
[94] Complaint ¶ 22
[95] *Id. (Emphasis and color in original)*
[96] *Id. (Emphasis in original)*
[97] *Rotkiske v. Klemm*, 589 U.S. ____ (2019), 18-328

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

few months after the letter was sent. It was only when Defendants sent their next letter on February 21, 2020 that their so-called "Pre-Legal Notification" letter and its various statements and threats became false and actionable by the Plaintiff.

Up until that moment, Defendants could have actually carried out their threat to refer the case to an attorney. It was only when they failed to carry out their threats that Plaintiff's cause of action accrued.[98] In other words, Plaintiff did not have a "complete and present cause of action," for the false representations and threats until the second letter established definitively that Defendants were not carrying out those threats.[99] "A cause of action does not become 'complete and present' until the plaintiff can file suit and obtain relief."[100] Here Plaintiff could not have filed a claim for the false threats until they were rendered false by the second letter. This case was therefore filed within the one year window afforded by the FDCPA's statute of limitations as it was filed within one year of the date Plaintiff's claims based on the first Pre-Legal Notification letter accrued.

**Tim Bolin is personally liable for the violations complained of in this case because he personally participated in those violations**

The FDCPA prohibits certain acts taken to collect debts by "any person ... in any business."[101] The Act contains several exemptions from that broad definition but employees who sign deceptive and fraudulent collection letters is not among those exemptions.[102] The Act also applies to any individual who

---

[98] *See Johnson v. Riddle*, 305 F.3d 1107, 1113 (Cir. 2002) (holding that the statute of limitations runs on the date of service of process rather than the date the collection suit is filed)
[99] *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)
[100] *Id.*
[101]  15 U.S.C. § 1692a(6) *(emphasis added)*
[102] *Id.*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

"regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[103] Under that plain language courts routinely hold individuals personally liable when they materially participated in collecting the debt at issue such as here where Tim Bolin signed all three deceptive collection letters.[104] Unless his signature is fraudulent, Bolin is therefore personally liable because he materially participated in the collections by affixing his signature to the deceptive collection letters. Indeed, on the face of the letters it is impossible to separate Midland and Bolin as they both plainly participated in the collections at issue.

## CONCLUSION

The overarching theme to Defendants' request for judgment on the pleadings is the false assertion that there is no factual support for Plaintiff's claims. In addition to simply being wrong, that position also patently betrays the standard of review under which the Court must construe all material allegations and inferences in the light most favorable to the non-moving party.

Even if the material allegations and inferences were not construed in Plaintiff's favor, they naturally fall in Plaintiff's favor because most of those facts are actually undisputed. For example, it is undisputed the Defendants sent the letters at issue and it is undisputed those letters contain specific statements and threats that were not true.

---

[103] *Id.*
[104] *See Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F.Supp.2d 615, 618 (D.Utah 2005); *Brink v. First Credit Res.*, 57 F.Supp.2d 848, 862 (D.Ariz.1999); *Ditty v. CheckRite, Ltd., Inc.*, 973 F.Supp. 1320, 1336-37 (D.Utah 1997); *Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354 (E.D.Cal.1995

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Even Defendants cannot deny that they sent the Final Notice letter instead of carrying out their threat to forward the account to an attorney in their Pre-legal Notification letter or that they again failed to carry out the same threat even after sending Plaintiff the Final Notice letter that explicitly and repeatedly represented itself as Plaintiff's final opportunity to respond before an attorney review and litigation would occur. If anyone is entitled to judgment on these facts it is the Plaintiff. Moreover, judgment on the pleadings in Defendants' favor is also improper because there are material facts still in dispute.

Defendants did not meet their burden required under Rule 12(c). For these reasons and the other reasons discussed herein Plaintiff respectfully requests a denial of Defendants' Motion for Judgment on the Pleadings.

DATED 6/1/2021

/s/ Eric Stephenson
*Attorney for the Plaintiff*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

CERTIFICATE OF SERVICE

I hereby certify that on 6/1/2021 I served the foregoing MEMORANDUM

IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

through this Court's electronic filing system to Defendant's counsel of record.

/s/ Eric Stephenson
*Attorney for the Plaintiff*

MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS