Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| TAMRA STEPHENSON, <br><br> Plaintiff, <br><br> vs. <br><br> MIDLAND CREDIT MANAGEMENT and TIM BOLIN <br><br> Defendants. | **MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case Number: 4:21-cv-00020 <br> Judge: David Nuffer |

Plaintiff respectfully requests judgment in her favor pursuant to Rule 56 of the Federal Rules of Civil Procedure that the Defendants' Final Notice letter violated sections 1692e(2), 1692(e)(5), 1692e(10) and 1692f of the Fair Debt Collection Practices Act for the reasons set forth herein.

INTRODUCTION

There is only one way a least sophisticated consumer could interpret the Defendant' Final Notice letter. Statements such as stating Defendants "intend to have a lawsuit filed against you," "Your prompt attention is necessary to avoid the possibility of attorney review," and "FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW" are unequivocal.[1] The giant red FINAL NOTICE stamp then fortifies the inescapable conclusion that the letter is claiming to be Plaintiff's last and final chance to avoid an attorney review and a lawsuit.

---
[1] Exhibit P-1 Final Notice Letter, February 21, 2020

There is no question Defendants intended for the Final Notice letter to convey a sense of extreme urgency as if it actually was Plaintiff's final notice before the account would be sent to an attorney and litigated. Through typographical elements, graphical queues, and carefully chosen unequivocal language, no other rational conclusion could be reached. It is only now when Defendants are facing legal liability that they equivocate and backtrack to pretend the letter does not create the precise urgency they worked so hard to convey.

Defendants' Final Notice letter was not the final notice it purported to be. The threats made in that letter did not come to fruition as stated and the Defendants' did not intend to carry out those threats making them undisputedly false. Instead of carrying out the threats made in the letter Defendants simply sent another letter. That is not what the Final Notice letter said would happen.

The Final Notice letter falsely represented "the character, amount, or legal status" of the debt.[2] It also conveyed "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[3] The Final Notice letter also contained threats to take legal action that was "not intended to be taken."[4] Making these false threats and representations to create a false sense of urgency also constitutes an "unfair or unconscionable means to collect or attempt to collect any debt."[5] Defendants squarely violated each of those prohibitions.

---

[2] 15 U.S.C. § 1692e(2)(A)
[3] 15 U.S.C. § 1692e(10)
[4] 15 U.S.C. § 1692e(5) and 1692f
[5] 15 U.S.C. § 1692f

STATEMENT OF UNDISPUTED FACTS

1. Defendants are debt collectors as they regularly collect past due debts owed to others.[6]

2. Defendants sent Plaintiff a Final Notice letter on February 21, 2020.[7]

3. The purpose of the Final Notice letter to was to collect a debt for personal, family, or household purposes from Plaintiff.[8]

4. The Final Notice letter was signed by Defendant Tim Bolin.[9]

5. The Final Notice letter stated that Defendants "intend to have a lawsuit filed against you."[10]

6. The Final Notice letter stated that it was the "**FINAL NOTICE**."[11]

7. The Final Notice letter stated that "FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW."[12]

8. The Final Notice letter stated "If you do not reply, we plan on sending your account to an attorney in the state of UT."[13]

9. The Final Notice letter stated that "PS. Your prompt attention is necessary to avoid the possibility of attorney review."[14]

10. The Final Notice letter contained the words "**ATTORNEY REVIEW PLANNED**" in bold white capital letters on a black solid background.[15]

---

[6] Answer ¶¶ 6-7, 9, 11, and 12
[7] Exhibit P-1 Final Notice Letter; Compl. ¶¶ 52-53, 55; Req. for Admis. No. 4; Answer ¶¶ 23-26
[8] Exhibit P-1 Final Notice Letter, February 21, 2020
[9] *Id.*; Request for Admission No. 13
[10] *Id.*
[11] *Id. (Emphasis in original)*
[12] *Id. (Emphasis in original)*
[13] *Id.*
[14] *Id.*

11. The Final Notice letter contained a section heading entitled "**What will an attorney do?**"[16]

12. The Final Notice letter contained a list of things Defendants' attorney will do such as commencing a lawsuit in a local court, serving a copy of the lawsuit personally on Plaintiff by a process server, sheriff, or other means, and seeking to obtain a judgment.[17]

13. The Final Notice letter contained a section heading entitled "**How could a judgment impact you?**"[18]

14. The Final Notice letter contained a list of how a judgment could impact the Plaintiff such as allowing Defendants to obtain a lien against Plaintiff's property, garnish the Plaintiff's wages or bank account, and obtain information about Plaintiff's assets by "a notice request, deposition, or a subpoena to appear in court."[19]

15. The Final Notice letter contained a section heading entitled "What are my options?"[20]

16. The options Defendants offered included paying the debt online, or calling to "discuss what options are available."[21]

17. The options also represented that Defendants have "flexible payment options tailored to your needs" and a promise to "work to avoid sending your account to an attorney."[22]

---

[15] *Id. (Emphasis in original)*
[16] Exhibit P-1 Final Notice Letter, February 21, 2020 *(Emphasis in original)*
[17] *Id.*
[18] *Id. (Emphasis in original)*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

18. Defendants did not forward Plaintiff's account for an attorney review until December 9, 2020.[23]

19. Defendants' Final Notice letter did not constitute the Plaintiff's final opportunity to pay off or otherwise resolve the alleged debt.[24]

20. When Plaintiff did not respond to the Final Notice letter, Defendants' sent Plaintiff another collection letter instead of forwarding the account for an attorney review.[25]

21. Defendants never commenced a lawsuit against the Plaintiff.[26]

22. Defendants have sent other consumers so many Final Notice letters like the one they sent to Plaintiff that even "after reasonable investigation and inquiry" they are unable to quantify how many such letters they sent.[27]

23. Defendants send Utah debtors so many other letters that contain terms and phrases such as: "final notice," "pre-legal notification," "attorney review," "pre-legal department," "pre-legal review," "generous one-time options," "lawsuit," "litigation," "attorney," "lawyer," "Tim Bolin," and "resolve this matter voluntarily" that they are unable to quantify how many such letters they sent.[28]

24. Tim Bolin personally participated in reviewing Plaintiff's account prior to sending the collection letters bearing his signature.[29]

---

[23] Request for Admission Nos. 1 and 4
[24] Req. for Admis. Nos. 1, 4, and 5; Answer ¶¶ 27-28; Exhibit P-2 Final Notice Extension Letter
[25] Request for Admission Nos. 1, 5, and 6; Exhibit P-2 Final Notice Extension Letter
[26] Request for Admission No. 1 and 10; Answer ¶ 34; Exhibit P-2 Final Notice Extension Letter
[27] Request for Admission No. 12
[28] Request for Admission No. 17
[29] Request for Admission No. 13

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about the material facts and the law entitles it to judgment.[30] Disputes about material facts are genuine only, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[31] The moving party is entitled to judgment as a matter of law if, "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[32] If, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial.[33] The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."[34] If the evidence produced by the nonmoving party, "is merely colorable... or is not significantly probative, ... summary judgment may be granted."[35] Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.[36]

## THE FAIR DEBT COLLECTION PRACTICES ACT

The Fair Debt Collection Practices Act was enacted in 1977 for, *inter alia*, the purpose of eliminating abusive debt collection practices by debt collectors.[37]

---

[30] Fed. R. Civ. P. 56(a)
[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)
[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)
[33] *Celotex*, 106 S.Ct. at 2553-54
[34] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)
[35] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249 (*citations omitted*)
[36] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
[37] J*erman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 398 (6th Cir.1998) (*quoting* 15 U.S.C. § 1692(e))

The FDCPA's legislative history explains the need for the Act arose to stop collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."[38]

Examples of particular practices debt collectors are forbidden to employ are set forth in the statute.[39] The list is non-exhaustive, however, as the FDCPA generally forbids collectors from engaging in any unfair, deceptive, harassing, abusive, or unconscionable behavior.[40]

The FDCPA is considered a remedial statute and therefore "it should be construed liberally in favor of the consumer."[41] Such broad construction is necessary, "so as to effect its purpose."[42] The FDCPA is also considered a strict liability statute since it "does not ordinarily require proof of intentional violation."[43] "Proof of one violation is sufficient to support a finding of summary judgment in favor of the Plaintiff in an FDCPA action."[44]

In determining whether there is a violation of the FDCPA, courts apply the least sophisticated consumer test.[45] This objective standard, "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant,

---

[38] S.Rep. No. 95–382, at 2 (1977), *reprinted* in 1977 U.S.C.C.A.N. 1695, 1696.
[39] *See* 15 U.S.C. § 1692 *et seq.*
[40] *Id.*
[41] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)
[42] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[43] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[44] *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn.1990)
[45] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *see also Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1329 (D. Utah 1997)

the unthinking and the credulous."[46] The least sophisticated consumer standard is a low standard and "is consistent with the norms that courts have traditionally applied in consumer-protection law."[47] For example, "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor."[48]

Whether language employed in connection with the collection of a debt violates the FDCPA is normally a question of law for the court to decide.[49] The "least sophisticated debtor" standard also applies to other provisions of the FDCPA such as sections 1692e, 1692e(5), 1692e(10) and 1692f.[50] Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor."[51]

ARGUMENT

**Defendants violated the FDCPA by sending a letter that falsely represented it was Plaintiff's "Final Notice" when it was not her final notice**

Under the Fair Debt Collection Practices Act debt collectors are prohibited from falsely representing "the character, amount, or legal status of any debt."[52] They are also more generally prohibited from using "any false representation or

---

[46] *Id.* at 1318-1319
[47] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)
[48] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (*quoting Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000))
[49] *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir1997). " '[T]he impact of language alleged to violate [the FDCPA] is judged under the 'least sophisticated debtor' standard.' "[*Baker v. Citibank (South Dakota), N.A.,* 13 F Supp.2d 1037, 1041 (S.D.Ca.1998), (*quoting Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir. 1988))
[50] *Van Westrienen v. Americontinental Collection Corp.*, 94 F.Supp.2d 1087,1099 (2000)(citations omitted)
[51] *Brown*, 464 F.3d at 454; *Gallegos v. LVNV Funding LLC*, 169 F.Supp.3d 1235, 1245 (2016)
[52] 15 U.S.C. § 1692e(2)(A)

deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[53] The FDCPA also prohibits making any "threat to take any action that cannot legally be taken or that is not intended to be taken."[54] The Act also prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."[55] Defendants squarely violated each of those prohibitions.

Defendants jointly sent Plaintiff a collection letter on February 21, 2020.[56] In that letter they unequivocally represented that the letter was Plaintiff's "FINAL NOTICE" before an attorney review and litigation would occur.[57] Defendants did not just represent it was her "final" opportunity to stop the attorney review and lawsuit however. They repeatedly and prominently employed various linguistic, visual, and typographical elements to emphasize the point that she had to respond or an attorney review and litigation would be inevitable. The most prominent of those elements was the inclusion of a red circular "FINAL NOTICE" stamp at the top of the letter.[58]



---

[53] 15 U.S.C. § 1692e(10)
[54] 15 U.S.C. § 1692e(5) and 1692f
[55] 15 U.S.C. § 1692f
[56] Answer ¶¶ 23; Exhibit P-1 Final Notice Letter
[57] Exhibit P-1 Final Notice Letter *(emphasis in original)*
[58] *Id*.

The letter also included various other statements to sustain the false notion that the letter was Plaintiff's final opportunity to resolve the matter without litigation. For example, the letter declared in the top center of the page in bold, centered, and underlined letters:

<u>**"IMPORTANT NOTICE – PLEASE READ CAREFULLY**</u>

<u>**FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW**</u>"[59]

The Final Notice letter also contained bold white capital letters on a black solid background stating:   **ATTORNEY REVIEW PLANNED**

Digging deeper into the letter also further verifies Defendants' intention to convince Plaintiff this was her last opportunity. Foreboding checklists prominently threatened in clear terms what their attorney would do when he reviews the account and how a judgment would impact the Plaintiff by triggering a lawsuit, liens, garnishments, and other asset seizures.[60]

If there was any doubt remaining about the intentional urgency of the letter that doubt is quickly dispelled by reading the various additional warnings and threats throughout the Final Notice letter such as "call our Pre-Legal department" and "[I]f you do not reply, we plan on sending your account to an attorney in the state of UT."[61] The letter even contained a postscript reinforcing the imminence of the threats. "PS. Your prompt attention is necessary to avoid the possibility of attorney review."[62] The Final Notice letter was undisputedly representing to be Plaintiff's final opportunity to pay or face litigation.[63] The only

---

[59] Exhibit P-1 Final Notice Letter *(Emphasis in original)*
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*

reasonable inference that could be made given those threats, the prominent use of persuasive typographical elements, the prior letter setting a stage for a final notice, and the actual language of the letter claiming to be Plaintiff's last opportunity to avoid litigation is that Defendants' next step was to send the account for the promised attorney review and litigation.

The letter was not ambiguous. It outlined the entire litigation process by overtly threatening to have an attorney "[c]ommence a lawsuit," "[s]erve a copy of the lawsuit personally" on the Plaintiff, "[s]eek to obtain a judgment" against the Plaintiff.[64] The letter even described the post-judgment remedies against the Plaintiff such as obtaining a lien against her property, garnishing her wages or bank accounts, and obtaining information about her assets.[65]

Despite the forcefulness, unequivocal language, and intricate details in the letter, all of those statements were false. The "Final Notice" letter was not Plaintiff's final opportunity and litigation was not imminently pending.[66]

Rather than send the account for the threatened attorney review and litigation, Defendant waited four months and then sent Plaintiff a "Final Notice Extension" letter.[67] In other words, Defendant did not carry out its threat to sue or send the account for an attorney review.[68]

Under the least sophisticated consumer standard the deceptively unfair nature of that Final Notice letter is without question. Defendants intended to convey the impression that the Final Notice letter was Plaintiff's last and final opportunity to act and that is exactly how the least sophisticated consumer would

---

[64] Exhibit P-1
[65] Exhibit P-1
[66] Answer ¶ 34; Exhibit P-2 Final Notice Extension Letter; Request for Admission Nos. 1, 5, 6, 10
[67] Exhibit P-2 Final Notice Extension Letter; Req. for Admis. No. 6
[68] Req. for Admis. Nos. 1 and 10

construe those threats and representations. Despite the intentional urgency of the letter, those representations and threats were definitively false. The "Final Notice" letter was not Plaintiff's final notice, Plaintiff's "prompt attention" was not "necessary to avoid the possibility of attorney review" or the commencement of a lawsuit, and Plaintiff's failure to reply did not result in the promised attorney review or litigation.[69]

Referring to their "pre-legal department" also cements the false notion that the matter was urgent enough to need an immediate reaction from Plaintiff when it actually was not at all urgent.[70] Indeed, failing to reply bought Plaintiff nearly a year of additional time and resulted in at least one more written communication before any attorney ever touched the account.[71] It is undisputed that Plaintiff's prompt attention was not "necessary" to an attorney review.[72] All she had to do was ignore the letter.

In presenting the letter as Plaintiff's "final notice" before an attorney review or litigation would occur Defendants falsely represented that the legal status of the debt was much closer to litigation than it actually was. Just placing the red "**FINAL NOTICE**" stamp so boldly at the top of the letter created the false representation that litigation was imminent when it was not. On its face the letter actually confirms that was the intent as it plainly states in bold, all capital, and underlined letters centered on the page:

---

[69] Exhibit P-1 Final Notice Letter; Req. for Admis. Nos. 1, 5, 6, 10
[70] Exhibit P-2
[71] Answer ¶ 34 (Confirming that the account was not sent for any attorney review until December 9, 2020); *See also* Certification of Midland Credit Management, Inc. ¶ 7); Req. for Admis. No. 1
[72] Exhibit P-1; Complaint ¶ 24.7; Req. for Admis. No. 1

MOTION FOR PARTIAL SUMMARY JUDGMENT

"**IMPORTANT NOTICE – PLEASE READ CAREFULLY**

**FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW**"[73]

The false urgency of the letter is especially egregious since the letter was a follow-up to the Defendants' "Pre-Legal Notification" letter sent two months or so earlier.[74] The false representations and the false urgency they combined to create plainly and inexcusably violate sections 1692e(2), 1692(e)(5), 1692e(10), and 1692f of the FDCPA since each of those subsections outright strictly prohibit any form of deception or subterfuge in collecting debt.[75] Under the least sophisticated consumer standard, if a debtor would reasonably believe the Final Notice letter threatens legal action the debt collector does not intend to take, it violates the FDCPA.[76]

It is well-accepted that statements in debt collection letters constitute threats to take legal action when they are "calculated to intimidate the least sophisticated consumer into believing that legal action against her is imminent" and "that the debtor's only options are either payment or being sued."[77] Equivocal or conditional language such as the use of the words "may" or "possible," do not negate the existence of a threat if a letter, in its entirety, could lead the least sophisticated debtor to believe that legal action is a real possibility.[78]

---

[73] Exhibit P-1 Final Notice Letter *(emphasis in original)*
[74] Exhibit P-2 Pre-Legal Notification Letter; Req. for Admis. No. 3
[75] Utah Code Ann. §§ 13-11-4 and 13-11-5
[76] *United States v. National Financial Services, Inc.,* 98 F.3d 131, 136 (Cir. 1996)
[77] *Irwin v. Mascott,* 112 F.Supp.2d 937, 951-953 and 964-965 (N.D.Cal.2000)
[78] *See id*. at 951 ("The use of the word 'may' does not mitigate the tone of the letter which purports to be a 'formal notice' ...." *); see also Baker v. G.C. Servs. Corp*., 677 F.2d 775, 779 (9th Cir.1982) (upholding a district court's determination that a statement constituted a threat when it " 'create(d) the impression that legal action by the defendant is a real possibility ...' " ) (alteration in original)

But Defendants did not equivocate. They clearly and distinctly stated that the attorney review and litigation with its consequences were all a certainty if Plaintiff ignored the letter.[79] By then sending another letter rather than following through with their threat, they cemented in their FDCPA violations. Taken as a whole and in light of the prior Pre-Legal Notification letter,[80] the statements made in the Final Notice letter cannot be construed any way other than a threat that "some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment" even though that threat was later discovered to be patently false.[81] Because the letter poses a "threat to take [legal] action," as viewed through the eyes of the unsophisticated consumer Plaintiff is entitled to judgment on this issue.[82] The Final Notice letter contained false statements and threats Defendants did not carry out. Defendants therefore violated sections 1692e(2), 1692(e)(5), 1692e(10) and 1692f of the FDCPA.

**Tim Bolin is personally liable for the violations complained of in this case because he personally participated in those violations**

The FDCPA prohibits certain acts taken to collect debts by "any person ... in any business."[83] The Act contains several exemptions from that broad definition but employees who sign deceptive and fraudulent collection letters is not among those exemptions.[84] The Act also applies to any individual who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[85] Under that plain language courts

---

[79] Exhibit P-1 Final Notice Letter
[80] Exhibit P-3 Pre-Legal Notification Letter
[81] *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (Cir. 1989)
[82] *See United States v. National Financial Servs., Inc.,* 98 F.3d 131, 136 (4th Cir.1996)
[83]  15 U.S.C. § 1692a(6) *(emphasis added)*
[84] *Id.*
[85] *Id.*

routinely hold individuals personally liable when they materially participated in collecting the debt at issue such as here where Tim Bolin signed the deceptive Final Notice letter.[86] Unless his signature is fraudulent, Bolin is personally liable because he materially participated in the collections by affixing his signature to the deceptive collection letters. [87] Indeed, on the face of the letters it is impossible to separate Midland and Bolin as both plainly participated in the collections at issue.

**Plaintiff reserves the determination of damages and other claims for a trial by jury**

By this motion Plaintiff seeks only an award of partial summary judgment against the Defendant for the FDCPA violations discussed herein. The determination of appropriate actual damages, as well as other FDCPA and state law violations as requested in the Complaint, are reserved for trial by jury.[88] After the determination of liability and damages, Plaintiffs will then seek an award of attorney's fees and costs under the FDCPA.[89]

CONCLUSION

Defendants unequivocally and repeatedly represented that the Final Notice letter was Plaintiff's last opportunity to stop an attorney review and litigation. Those representations were false. The Final Notice letter was not Plaintiff's final notice. There is no dispute on this issue.

---

[86] *See Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F.Supp.2d 615, 618 (D.Utah 2005); *Brink v. First Credit Res.,* 57 F.Supp.2d 848, 862 (D.Ariz.1999); *Ditty v. CheckRite, Ltd., Inc.,* 973 F.Supp. 1320, 1336-37 (D.Utah 1997); *Newman v. Checkrite Cal., Inc.,* 912 F.Supp. 1354 (E.D.Cal.1995

[87] Request for Admission No. 13

[88] *Kobs v. Arrow Service Bureau, Inc*., 134 F.3d 893, 895-896 (7th Cir. 1986); *Sibley v. Fulton DeKalb Collection Services*, 677 F.2d 830 (11th Cir. 1982)

[89] 15 U.S.C. § 1692k(a)(3)

This is the exact kind of deception the Fair Debt Collection Practices Act strictly prohibits. Collection agencies are not allowed to falsely represent "the character, amount, or legal status of any debt."[90] They are also prohibited from using "any false representation or deceptive means" to collect or attempt to collect a debt[91] The FDCPA also strictly prohibits making any "threat to take any action that cannot legally be taken or that is not intended to be taken."[92] The Act also prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."[93] Defendants squarely violated each of those prohibitions.

Plaintiff therefore respectfully requests judgment in her favor pursuant to Rule 56 of the Federal Rules of Civil Procedure that Defendants violated sections 1692e(2), 1692(e)(5), 1692e(10) and 1692f of the Fair Debt Collection Practices Act.

DATED 7/13/2021 /s/ Eric Stephenson
*Attorney for the Plaintiff*

---

[90] 15 U.S.C. § 1692e(2)(A)
[91] 15 U.S.C. § 1692e(10)
[92] 15 U.S.C. § 1692e(5) and 1692f
[93] 15 U.S.C. § 1692f

CERTIFICATE OF SERVICE

    I hereby certify that on 7/13/2021 I served the foregoing MOTION FOR PARTIAL SUMMARY JUDGMENT through this Court's electronic filing system to Defendant's counsel of record.

                                                   /s/ Eric Stephenson
                                                 *Attorney for the Plaintiff*