THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TAMRA STEPHENSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT AND TIM BOLIN,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; FINDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT MOOT**<br><br>Case No. 4:21-cv-00020-DN-PK<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendants, Midland Credit Management Inc. ("Midland") and Tim Bolin ("Bolin") (collectively "Defendants") moved for judgment on the pleadings (the "Motion")[1] on all the causes of action that Plaintiff Tamra Stephenson ("Plaintiff") has asserted against them.[2] Plaintiff responded to the Motion.[3] Defendants replied in support.[4] After Defendants filed a proposed memorandum order, Plaintiffs filed a Motion to Alter or Amend Judgment,[5] which was construed as an objection to the proposed order.[6]

---

[1] Defendants' Motion for Judgment on the Pleadings, docket no. 15, filed May 18, 2021.

[2] Complaint, docket no. 2, filed February 12, 2021.

[3] Memorandum in Opposition to Motion for Judgment on the Pleadings ("Opposition"), docket no. 20, filed June 1, 2021.

[4] Reply in Support of the Motion ("Reply"), docket no. 23, filed June 15, 2021.

[5] Docket no. 32, filed August 2, 2021.

[6] Docket Text Order taking under advisement Motion, docket no. 33, August 13, 2021.

As the following Memorandum Decision explains, the Motion is GRANTED in part and DENIED in part, dismissing the First Cause of Action without prejudice for failure to state a claim. The remaining causes of action which are based on state law are dismissed. The dismissal of these causes of action is without prejudice, because pendent jurisdiction will not be exercised over these causes of action.

## BACKGROUND

Plaintiff owed delinquent credit card debt to Midland.[7] Plaintiff claims that Midland sent certain Letters[8] in violation of § 1692e of the FDCPA because the letters threatened to refer Plaintiff's account to a law firm to be reviewed by an attorney for possible legal options.[9]

Via correspondence dated December 6, 2019, Midland notified Plaintiff of, in part, the delinquency of the debt and the potential that Midland "may proceed with forwarding this account to an attorney."[10]

---

[7] Complaint, docket no. 2, ¶ 12; Answer, docket no. 7 ¶ 12.

[8] The "Letters" refer to Exhibits A through E of the Answer (docket no. 7) which are more fully identified as follows:
- Exhibit A - December 6, 2019, letter from Midland to Plaintiff, docket no. 7-1;
- Exhibit B – February 21, 2020, letter from Midland to Plaintiff, docket no. 7-2;
- Exhibit C – June 17, 2020, letter from Midland to Plaintiff, docket no. 7-3;
- Exhibit 2 to Certification of Kimberly Larsen attached to Defendants' Answer as Exhibit D and which is a letter dated December 11, 2020, from Johnson Mark LLC, counsel for Midland, to Plaintiff, docket no. 7-4;
- Exhibit E – February 9, 2021, letter from Johnson Mark, LLC, counsel for Midland to both Plaintiff and Plaintiff's counsel, Eric Stephenson, docket no. 7-5.

[9] Complaint, docket no. 2, ¶¶ 69-76.

[10] Complaint, docket no. 2, ¶ 12; Answer, docket no. 7 ¶¶ 12,20 – December 6, 2019 Pre-Legal Notification.

Midland next sent Plaintiff a letter dated February 21, 2020 (the "February Letter") which was emblazoned with a prominent "FINAL NOTICE" graphic. The February Letter does not  indicate it is from an attorney. Instead, the letter states, in part, as follows: "If you do not reply, we plan on sending your account to an attorney in the state of UT." A white-on-black banner reads "ATTORNEY REVIEW PLANNED. "The letter advised that "FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW," and "We intend to have a lawsuit filed against you. Before a lawsuit can be filed, an attorney must review your account." The steps in litigation and possible effects of a judgment were then outlined.

The letter also advised Plaintiff that "We want to help you resolve this matter voluntarily" and included information such as (1) a toll-free telephone number for Plaintiff to discuss the debt with Midland; (2) Midland's website; and (3) instructions for methods of payment, including by phone, online and by mail. [11] The February Letter is from Midland, signed by Division Manager Bolin. It also provides a phone number to the Pre-Legal Department for Plaintiff to discuss her delinquency.[12]

Midland also sent Plaintiff a letter dated June 17, 2020 ("the June Letter"), titled "Final Notice Extension" and "Pre-Legal Notice."[13] Similar to the February Letter, the June Letter is from Midland, signed by Bolin in his capacity as Division Manager of Midland. The June Letter

---

[11] Complaint, docket no. 2,. ¶ 23; Answer, docket no. 7-2.

[12] *Id.*

[13] Answer, docket no. 7-3.

also provides information to Plaintiff, including options for payment and a toll-free number to contact Midland.[14] The June Letter also explains that Plaintiff is being provided additional time to avoid attorney review of the debt due to tough times and provided additional options for Plaintiff to avoid an attorney review.

Plaintiff alleges that these Letters were misleading in violation of the FDCPA, in part because Midland never sent the Plaintiff's account to an attorney for legal review.[15] As things turned out, Plaintiff's account was indeed sent to the law firm of Johnson Mark LLC on or about December 9, 2020 for legal review.[16] On December 11, 2020, Johnson Mark LLC sent Plaintiff a letter advising of its representation of Midland in connection with the Plaintiff's Account.[17] In response to correspondence from Plaintiff, Johnson Mark LLC then sent Plaintiff's counsel a debt verification response letter on February 9, 2021, days before this action was filed.[18]

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[19] The factual details supporting a claim must be great enough to make the claim plausible, rather than merely possible; i.e., "enough to raise a right to relief above the speculative

---

[14] *Id.*

[15] *Id.* at ¶¶ 29-34.

[16] Answer, docket no. 7-4 ¶ 7

[17] *Id.* at ¶ 8.

[18] Answer, Ex. E, docket no. 7-5.

[19] *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(b)(6).

level[.]"[20] It must be reasonable for a court to draw the inference that the defendant is liable, based on the facts stated.[21] Recitations of elements of a claim and conclusory statements are insufficient to meet the standard of plausibility.[22] A court may consider exhibits to pleadings without converting a motion for judgment on the pleadings into a motion for summary judgment.[23]

## DISCUSSION

### The Letters Sent by Midland do not Violate the FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[24]

For most courts, "the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'"[25] This hypothetical

---

[20] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

[21] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[22] *Id.*

[23] *Tuttle v. Nationwide Affinity Ins. Co. of Am.*, No. 19-CV-00526-NYW, 2019 WL 2208513, at *2 (D. Colo. May 22, 2019).

[24] 15 U.S.C. § 1692(e)

[25] *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008)); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("the 'least sophisticated consumer' . . . standard has been adopted by all federal appellate courts that have considered the issue."). The Tenth Circuit "has not explicitly adopted the least sophisticated consumer standard, but it has applied the test in at least two, albeit unpublished, opinions." *Smith v. Johnson Mark LLC*, No. 1:20-cv-00032-RJS-DAO, 2021 WL 66297, at *3 (D. Utah Jan. 7, 2021) (quotation omitted). *See also Chadwick v. Bonneville Billing & Collections, Inc.*, No. 1:20-CV-132-TS, 2021 WL 1140206 , at *2-3 (D. Utah Mar. 25, 2021) (applying the least sophisticated consumer test).

consumer is a "naïve" and "credulous" person.[26] However, even the least sophisticated consumer is presumed to have a "concept of reasonableness."[27] While not possessing "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer,"[28] the least sophisticated consumer "is neither irrational nor a dolt."[29]

Whether or not a collection letter violates the FDCPA is a question of law.[30]

### Claims Based on Letters Prior to February 12, 2020, are Time-Barred

The Complaint references communications, including correspondence dated December 6, 2019, which are time barred under the FDCPA.[31] Lawsuits arising under the FDCPA must be brought "within one year from the date on which the violation occurs."[32] The Complaint was filed on February 12, 2021.[33] Therefore, any claims based on communications prior to February 12, 2020 are time-barred.

### The Letters Referenced in the Complaint Do Not Violate § 1692e(5) of the FDCPA

To allege a violation of § 1692e(5) of the FDCPA, a plaintiff must show that defendants (1) threat[ened] to take any action, (2) that cannot legally be taken or that was not intended to be taken.[34] Plaintiff cannot meet either prong.

---

[26] *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015) (citations omitted).

[27] *Clomon*, 988 F.2d at 1319.

[28] *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).

[29] *Lotito v. Recovery Assocs. Inc.*, No. 13-CV-5833 SJF-AKT, 2014 WL 4659464, at *5 (E.D.N.Y. Sept. 17, 2014) (citations omitted).

[30] *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1223 (D. Kan. 2014).

[31] Complaint, docket no. 2, ¶ 12.

[32] 15 U.S.C. § 1692k(d)

[33] Complaint, docket no. 2.

[34] 15 U.S.C. § 1692e(5).

*The Letters Do Not Threaten Legal Action*

To constitute a threat of legal action under the FDCPA, a letter must convey to the least sophisticated consumer that such an action is "authorized, likely, and imminent."[35] Letters that "simply state that the debt collector '*may* consider additional remedies' and that the accounts were placed with an attorney for 'such action as necessary'" are making equivocal statements that "do not threaten legal action."[36] Accordingly, "even where communications specifically refer to legal action, a threat does not exist where the references are couched in terms of mere possibility."[37]

The February Letter states that "If you do not reply, we *plan* on sending your account to an attorney in the state of Utah" and that a lawsuit would commence only "*if* the attorney determines there is cause for a suit."[38] Such language indicates that Midland was only "planning" to send the account to its counsel. Counsel could determine there was no cause for suit, and Plaintiff could avoid legal action. The February Letter also suggests that legal action is not imminent by stating that Plaintiff can call "to discuss what options are available" and "we will work to avoid sending your account to an attorney."[39] Additionally, the June Letter provides three different options to Plaintiff, including making no immediate payment if Plaintiff contacted

---

[35] *Mikhael v. Credit Corp Sols. Inc.*, No. 20-cv-02908-KAM-RLM, 2021 WL 2434325, at *4 (E.D.N.Y. June 15, 2021) (quoting *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993)).

[36] *Avila v. Riexinger & Assocs.*, LLC, 644 F. App'x 19, 22 (2d Cir. 2016).

[37] *Sorel v. Capital One Servs., LLC*, No. 3:11-CV-703 SRU, 2012 WL 3596487, at *6 (D. Conn. Aug. 20, 2012) (citation omitted); *see also Wood v. Capital One Servs., LLC*, No. 5:09-CV-1445 NPM/DEP, 2012 WL 4364494, at *9 (N.D.N.Y. Sept. 21, 2012) (adopting *Sorel* analysis).

[38] Answer, docket no. 7-2; Complaint, docket no. 2 (emphasis added).

[39] *Id.*

Midland prior to July 17, 2020.[40] When language in a letter gives a plaintiff alternate options besides "either remitting payment or being referred to an attorney," such language "further removes the [l]etter from any apparent or immediate or imminent threat of legal action."[41] Any consumer reading the letters at issue in this case would realize that contacting Midland was an alternate option besides remitting payment or being referred to an attorney, and thus legal action was not imminent. Contrary to Plaintiff's arguments in her Motion to Alter or Amend Judgment,[42] no reasonable jury could conclude otherwise.

The language in the February and June Letters shows that Midland indicated that a lawsuit was a strong possibility, but gave Plaintiff additional remedies to avoid a legal referral and subsequent lawsuit. Even the least sophisticated consumer could not view the Letters as threatening imminent legal action.

*There is No Basis for a Claim that Defendants Could Not Legally Proceed with Legal Action or Did Not Intend to Proceed with Legal Action*

Plaintiff claims that Midland never actually intended to proceed with legal action against her and that, as a result, the Letters violated the FDCPA. Specifically, Plaintiff contends that "Midland never sent the alleged debt to an attorney for a review" and that "on information and belief, Midland never intended or was never able to sue Plaintiff."[43]

---

[40] Answer, Ex. C; docket no. 7-3.

[41] *Mikhael*, 2021 WL 2434325 at *5.

[42] Docket no. 32 at 3, 6.

[43] Complaint, docket no. 2 ¶ 38.

A plaintiff has the burden to prove a defendant never intended to proceed with legal action.[44] To meet this burden, the plaintiff must show the possibility of a referral to an attorney can be "ruled out, " such as when "a creditor ha[s] a fixed practice of not bringing suits against customers."[45] Conclusory statements that threats to litigate were legally proscribed or made falsely do not state a plausible claim under § 1692e(5).[46]

Plaintiff argues that Midland never intended to file suit, but offers no proof of this. If initiating a lawsuit is "both legal and plausible, it would defy common sense" to conclude (absent proof of special circumstances) that Midlands never intended to file a lawsuit.[47] Here, Plaintiff's "unadorned, the defendant-harmed-me-accusations that lack factual content"[48] do not state a claim against Defendants, and the Court need not accept Plaintiff's interpretation of Defendant's intent.[49] Plaintiff's assertion that Midland does not sue Utah consumers as a matter of course[50] is conclusory, unsupported by fact, and incorrect.[51] Furthermore, Plaintiff's assertions that Midlands would or could not sue her are belied by Midland actually referring the

---

[44] *Baptist v. Glob. Holding & Inv. Co.*, No. CIVA04CV2365(DGT), 2007 WL 1989450, at *5 (E.D.N.Y. July 9, 2007) (citing *Sluys v. Hand*, 831 F.Supp. 321, 327 (S.D.N.Y. 1993)).

[45] *Id.*

[46] *Little v. Portfolio Recovery Assocs., LLC*, 548 F. App'x 514, 516 (10th Cir. 2013) (unpublished).

[47] *Sluys,* 831 F. Supp. at 327.

[48] *See Altieri v. Overton, Russell, Doerr, & Donovan, LLP,* 281 F. Supp. 3d 254, 267–68 (N.D.N.Y. 2017).

[49] *See Allen v. Advanced Call Ctr. Techs., L.L.C.*, No. 18-CV-2873 (RRM) (AYS), 2019 WL 4887683, at *7 (E.D.N.Y. Sept. 30, 2019) ("The least sophisticated consumer would not reasonably read [Defendant's] letters in the way Plaintiff suggests, and the Court need not accept their idiosyncratic interpretation.")

[50] Complaint, docket no. 2, ¶ 36.

[51] Judicial notice of Utah District Court cases 199702712 and 199910515 is taken, both of which involve Midland filing lawsuits against Utah consumers in the two-year period prior to the filing of the complaint. A court may take judicial notice of proceedings in other courts in a Rule 12(b)(6) motion, provided those proceedings have a direct relation to matters at issue in the present case. *Hodgson v. Farmington City*, 675 F. App'x 838, 840-41 (10th Cir. 2017) (unpublished).

account to counsel.[52] Plaintiff cannot plausibly state facts in support of the allegation that Midland did not intend to forward Plaintiff's account to an attorney because, in reality, Midland did.

Midland's actions were also not legally proscribed. Midland had given Plaintiff more than ample time to try and address her delinquency. Having failed to repay her debt, Midland – as it is permitted to do – notified Plaintiff that it planned to refer the matter for legal consideration. Midland, again well within its rights, did indeed refer the matter to counsel for consideration. Prior to filing a lawsuit, counsel corresponded with Plaintiff and her attorney regarding the debt. These actions were all legal, and did not constitute a violation of the FDCPA.

### Plaintiff's § 1692e(11) Claim Fails

Plaintiff claims that the relevant disclosures required under § 1692e(11) were present in the Letters, but those disclosures were on the back and overshadowed by the "various other language, threats, and representations contained in the letters."[53] However, the Letters each included at the bottom of the front page in bolded, capital letters "PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION," and included the relevant disclosures at the top of the reverse page in a box set apart from the rest of the letter.[54] "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."[55] The front page not only directs Plaintiff to the disclosures, but the disclosures are set apart from the

---

[52] See *Kalebaugh*, 43 F. Supp. 3d at 1229.

[53] Complaint, docket no. 2, ¶ 31.

[54] Answer, docket no. 7-2; docket no. 7-3.

[55] *Cloman*, 988 F.2d at 1319.

rest of the letter in a bolded, isolated box on the top of the reverse page.[56] Under these circumstances, the Letters do not violate § 1692e(11).[57]

### Plaintiff's § 1692e(10) Claim Also Fails[58]

Plaintiff also claims that Defendant's Letters "were false, deceptive, unfair, and misleading and were made for the purposes of misleading consumers."[59] Plaintiff's claims, which this Memorandum Decision construes as brought under § 1692e(10), are largely factually unsupported and based the same conclusory statements and allegations described above.[60] Accordingly, these claims cannot survive a motion to dismiss.[61]

Plaintiff vigorously contends that the phrase FINAL NOTICE and the phrase "FAILURE TO RESPOND WILL RESULT IN ATTORNEY REVIEW" were false, deceptive, and unfair because they suggested action which never occurred.[62] As stated above, Plaintiff's account was actually referred to an attorney. Additionally, the phrase "FINAL NOTICE" may, when read alone, be false in that an extension to that notice was later sent. But when read in the context of

---

[56] Answer, docket no. 7-2; docket no. 7-3.

[57] *See O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1015 (D. Colo. 1997).

[58] Paragraph 48 of the Complaint also lists almost the entirety of every provision under the FDCPA while also stating "amongst others". Also, Count I merely lists 15 U.S.C. § 1692 without any additional information. docket no. 2 ¶¶ 63-76. However, Plaintiff fails to specifically identify what other sections of the FDCPA form the basis for any claims against Defendants, or to link those provisions to any facts, other than what has already been discussed. Thus, to the extent Plaintiff is attempting to allege any other violations under any other section of the FDCPA, the complaint does not plead facts to support such claims.

[59] Complaint, docket no. 2, ¶ 72.

[60] Complaint, docket no. 2, ¶¶ 29, 72. For example, Plaintiff argues in the complaint that the June Letter was deceptive because "she had options available to her that were not listed in the letters," but fails to allege what these options were or how Defendants' offers suggested she did not have other options.

[61] *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[62] Complaint, docket no. 2, ¶ 72. Plaintiff also makes this argument in her objections, but as outlined below, this objection is without merit.

the letter, it is clear that the letter was not final but was a notice before Midland *planned* to send the account to an attorney. Cases holding that a "FINAL NOTICE" is deceptive rely on other content and context, such as a statement that the notice was the "final opportunity to resolve this matter before further action is taken."[63] The entire document must be read to determine if it would deceive the least sophisticated consumer. Other cases do not contain enough text of letters using the words "final notice" or "final demand" to make those cases useful here.[64]

Examination of the text of the letter shows that it would not deceive the least sophisticated consumer. A white-on-black banner reads "ATTORNEY REVIEW PLANNED." The letter states: "If you do not reply, we plan on sending your account to an attorney in the state of UT." The letter advised that "FAILURE TO REPLY WILL RESULT IN ATTORNEY REVIEW," and "We intend to have a lawsuit filed against you. Before a lawsuit can be filed, an attorney must review your account." The steps in litigation and possible effects of a judgment were then outlined. The letter also advised Plaintiff that "We want to help you resolve this matter voluntarily" and included information such as (1) a toll-free telephone number for Plaintiff to discuss the debt with Midland; (2) Midland's website; and (3) instructions for methods of payment, including by phone, online and by mail.[65] The February Letter is from Midland, signed by Bolin. It also provides a phone number to the Pre-Legal Department for Plaintiff to discuss her delinquency.[66] When read in this context, the phrase "Final Notice" would not deceive the

---

[63] *Cash v. Allied Interstate, Inc.*, No. CIV.A.H-04-0932, 2005 WL 1693941, at *2 (S.D. Tex. July 19, 2005).

[64] *Marino v. Hoganwillig*, PLLC, 910 F. Supp. 2d 492, 494 (W.D.N.Y. 2012); *Herbert v. Monterey Fin. Servs., Inc.*, 863 F. Supp. 76, 78 (D. Conn. 1994).

[65] Complaint, docket no. 2, ¶ 23; Answer, docket no. 7-2.

[66] *Id*.

least sophisticated consumer into believing the letter would be the last chance to avoid litigation or the last communication between Midland and the consumer.

Accordingly, Plaintiff fails to state claim for any violation under the FDCPA and Plaintiff's First Cause of Action is DISMISSED without prejudice.

### The District Court Will Decline Jurisdiction over the Second and Third Causes of Action

The remaining causes of action against the Defendants – the second and third - are both based on the same operative facts of the FDCPA claim, but originate under Utah state law. For example, as she did in support of her FDCPA claim, Plaintiff alleges that Defendants "threatened to send Plaintiff's account to an attorney for review when they knew they would not carry out that threat,"[67] as basis for the second cause of action under the Utah Consumer Sales Practices Act. Plaintiff makes a similar factual assertion to support her fraud claim under Utah state law in Count III, where she asserts that "Defendants knew they would not carry out their threats when they made their threats to the Plaintiff and other consumers."[68]

With the dismissal of the First Cause of Action, state law causes of action now predominate in the Complaint. Under 28 U.S.C. § 1367(c)(2), pendent jurisdiction will not be exercised over the Defendants and over the causes of action in which they are named. These claims are dismissed without prejudice.

---

[67] Complaint, docket no. 2, ¶ 83.

[68] Complaint, docket no. 2, ¶ 105.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings[69] is GRANTED in part and DENIED in part. Consequently, all of the Plaintiff's claims against MIDLAND and BOLIN are DISMISSED without prejudice.

IT IS FURTHER ORDERED that, in granting this Motion, the pending Motion for Partial Summary Judgment[70] filed by the Plaintiff is MOOT.

Dated August 23, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[69] Docket no. 15.
[70] Docket no. 29.